UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 10-CV-00842 CMA-KLM

DENIS RYSKAMP, Derivatively on Behalf of
BOULDER GROWTH & INCOME FUND, INC.,

      Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
JOHN S. HOREJSI, and
SUSAN L. CICIORA,

      Defendants,

   and

BOULDER GROWTH AND INCOME FUND, INC.,

      Nominal Defendant.

---

**NOMINAL DEFENDANT BOULDER GROWTH AND INCOME FUND, INC., AND THE REVIEW COMMITTEE MEMBERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 8(a), 12(b)(6), AND 23.1**

---

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................... 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

    A.   Plaintiff's Demand ................................................................. 3

    B.   The Challenged Transactions ................................................... 4

        1.   The 2008 Rights Offering ................................................ 4

        2.   The Suspension of Level-Rate Distributions ................................ 5

    C.   The Board's Response to the Demand Letter ................................... 5

III.  ARGUMENT ............................................................................ 7

    A.   Legal Standards Applied to Stockholder Derivative Actions .................... 7

        1.   Stockholder Derivative Actions ........................................ 7

        2.   The Law of Demand Refusal ............................................ 8

        3.   Pleading Requirements in Demand Refused Actions ........................ 9

    B.   Plaintiff Has Not Pled with Particularity that His Demand Was
Wrongfully Refused ................................................................ 10

        1.   The Review Committee Acted Independently on the Demand ..... 10

        2.   Under the Business Judgment Rule, the Court Must Defer to
the Review Committee's Business Judgment to Refuse
Plaintiff's Demand ..................................................... 11

    C.   Plaintiff Has Not Adequately Pled Claims for Breach of Fiduciary
Duty and Unjust Enrichment ...................................................... 14

        1.   Plaintiff Has Not Adequately Pled a Breach of Fiduciary Duty
Claim Against the Defendants .......................................... 14

        2.   Plaintiff Has Not Adequately Pled an Unjust Enrichment
Claim Against the Review Committee Members ......................... 16

IV.   CONCLUSION ........................................................................ 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*,
  665 A.2d 1038 (Md. 1995) ........................................................................ 15

*Allison v. General Motors Corp.*,
  604 F. Supp. 1106 (D. Del. 1985) ..................................................... 10, 11

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007).................................................................... 14, 16

*Bender v. Schwartz*,
  917 A.2d 142 (Md. 2007) ..................................................................passim

*Bezirdjian v. O'Reilly*,
  183 Cal. App. 4th 316 (2010) ................................................................. 13

*Burns v. Friedli*,
  241 F. Supp. 2d 519 (D. Md. 2003).................................................... 2, 10

*Costa Brava Partnership III L.P. v. Telos Corp.*,
  No. 24-C-05-009296, 2008 MDBT 4 (Md. Cir. Ct. Jan. 7, 2008) ............ 12

*Daily Income Fund, Inc. v. Fox*,
  464 U.S. 523 (1984)................................................................................ 8

*Danielewicz v. Arnold*,
  769 A.2d 274 (Md. 2001) ......................................................................... 9

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997).............................................................. 13

*Glenbrook Capital Ltd. Partnership v. Kuo*,
  525 F. Supp. 2d 1130 (N.D. Cal. 2007).................................................... 9

*Halebian v. Berv*,
  631 F. Supp. 2d 284 (S.D.N.Y. 2007) ...................................................... 7

*Halpert Enters., Inc. v. Harrison*,
  No. 07-1144-cv, 2008 WL 4585466 (2d Cir. Oct.15, 2008)..................... 12

*Hill v. Cross Country Settlements, LLC*,
  936 A.2d 343 (Md. 2007) ....................................................................... 17

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Boston Scientific Corp. S'holder Litig.*,
 No. 02 Civ. 247(AKH), 2007 WL 1696995 (S.D.N.Y. June 13, 2007) ...................... 13

*In re Lear Corp. S'holder Litig.*,
 967 A.2d 640 (Del. Ch. 2008) .................................................................................. 12

*In re Limited, Inc.*,
 No. CIV.A. 17148-NC, 2002 WL 537692 (Del. Ch. Mar. 27, 2002) ......................... 11

*Kamen v. Kemper Financial Serv., Inc.*,
 500 U.S. 90 (1991)..................................................................................................... 7

*Knopf v. Semel*,
 No. C 08-3658 (PVT), 2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ........................ 13

*Levine v.* Smith,
 591 A.2d 194 (Del. 1991) ......................................................................................... 13

*Levner v. Saud*,
 903 F. Supp. 452 (S.D.N.Y. 1994) ........................................................................... 10

*Lewis v. Hilton*,
 648 F. Supp. 725 (N.D. Ill. 1986) ............................................................................. 13

*Madvig v. Gaither*,
 461 F. Supp. 2d 398 (W.D.N.C. 2006) ..................................................................... 12

*Mieuli v. Debartolo*,
 No. C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ........................... 10

*Mona v. Mona Elec. Group, Inc.*,
 934 A.2d 450 (Md. 2007) ......................................................................................... 16

*NAACP v. Golding*,
 679 A.2d 554 (Md. 1996) ......................................................................................... 15

*Ridge at Red Hawk, LLC v. Schneider*,
 493 F.3d 1174 (10th Cir. 2007) ............................................................................... 16

*Scalisi v. Grills*,
 501 F. Supp. 2d 356 (E.D.N.Y. 2007) ..................................................................... 12

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Shenker v. Laureate Educ., Inc.*,
   983 A.2d 408 (Md. 2009) ........................................................................ 16

*State v. Philip Morris Inc.*,
   No. 96122017, CL211487, 1997 WL 540913 (Md. Cir. Ct. May 21, 1997).............. 17

*Tomran, Inc. v. Passano*,
   862 A.2d 453 (Md. 2004) ........................................................................ 13

*Werbowsky v. Collomb*,
   766 A.2d 123 (Md. 2001) ........................................................... 7, 8, 9, 14


S T A T U T E S

Md. Code Ann. Corps. & Ass'ns § 2-405.3(b) ................................................. 6


R U L E S

17 C.F.R. § 240.16b-6(b) ............................................................... 3, 5

Fed. R. Civ. P. 8 ...................................................................... 3, 14, 15

Fed. R. Civ. P. 23.1 ....................................................................... 9, 10


O T H E R  A U T H O R I T I E S

E. Norman Veasey, <u>Separate and Continuing Counsel for Independent Directors:</u>
   <u>An Idea Whose Time Has Not Come As A General Practice</u>, 59 Bus. Law.
   1413 (2004) .......................................................................... 12

James J. Hanks, Jr., MARYLAND CORPORATION LAW § 7.21 (Aspen Supp.
   2008)................................................................................ 10, 12

## I.   **PRELIMINARY STATEMENT**

A fundamental principle of corporate law is that a corporation's board of directors, not its stockholders, manages the business affairs of the corporation.  This includes the decision of whether the corporation should pursue litigation in response to a stockholder demand.  Here, the Board of Directors (the "Board") of the Boulder Growth and Income Fund, Inc.'s (the "Fund"),[1] through its independent Review Committee, investigated, considered, and properly refused plaintiff Denis Ryskamp's ("Plaintiff") demand to pursue this litigation.  Therefore, the Court must terminate this action and dismiss all claims in the Verified Corrected Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment (the "Amended Complaint" or "AC").

Only under exceptional circumstances is Plaintiff permitted to pursue claims derivatively on behalf of the Fund.  To do so, Plaintiff must establish at the outset (1) that making a demand on the Board would be futile (*i.e.*, demand futility) or (2) that the Board wrongfully refused his demand (*i.e.*, wrongful refusal).  As a matter of law, Plaintiff waived a demand futility argument because he made a demand on the Board.  As for wrongful refusal of the demand, controlling Maryland and federal law holds that Plaintiff's generic allegations are wholly insufficient to usurp the Board's informed decision regarding this litigation.  *See Burns v. Friedli*, 241 F. Supp. 2d 519, 525 (D. Md. 2003) (plaintiff must plead wrongful refusal with particularity).  Accordingly, Plaintiff fails to establish his right to maintain this action on behalf of the Fund.

While the Court should dismiss the case without examining the pleading

---

[1] The Fund is a closed-end management investment company incorporated under the laws of Maryland and based in Boulder, Colorado.  (AC ¶ 4.)

sufficiency of the underlying claims, the claims must also be dismissed pursuant to Rule 8(a) of the Federal Rules of Civil Procedure because Plaintiff fails to state facts constituting legally cognizable claims.  With respect to the claim for breach of fiduciary duty, Plaintiff does not allege that the purported breaches caused harm to the Fund.  Rather, Plaintiff alleges that the breaches caused diminution in the Fund' share price, which could only be a harm to the Fund's stockholders.  Likewise, Plaintiff's unjust enrichment claim fails because the Amended Complaint contains no factual allegations establishing that the Review Committee Members[2] received any benefits as a result of the alleged conduct.  These omissions are fatal, and provide the Court with additional reasons to dismiss the claims in the Amended Complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Demand.

On September 22, 2009, Plaintiff sent a stockholder demand letter to the Fund's Board through his counsel.  (AC ¶ 79.)  In the Demand Letter,[3] Plaintiff requested the Board investigate and take appropriate action pertaining to:  (1) the Board's approval of a one-for-three transferable rights offering priced at net asset value (the "2008 Rights

---

[2] The Review Committee Members are defendants Joel W. Looney, Dean L. Jacobson, and Richard I. Barr. (AC ¶ 84.)  Two other members of the Board, John S. Horejsi and Susan L. Ciciora, are also named as defendants in this action. (*Id.* ¶¶ 8-9.)  Defendants Horejsi and Ciciora were not members of the Board's Review Committee and did not participate in the consideration of Plaintiff's demand. (*Id.* ¶ 84.)  Defendants Horejsi and Ciciora are represented by separate counsel in this action. Along with the Review Committee Members, defendants Horejsi and Ciciora are collectively referred to as "Defendants".

[3] On October 29, 2009, Plaintiff sent a second stockholder demand letter requesting the Board investigate his claim that the Ernest Horejsi Trust No. 1B (the "EH Trust") violated Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"). (AC ¶ 79; Request for Judicial Notice ("RJN"), attached thereto as Exhibit D at 3.)  Plaintiff's September 22 and October 29 stockholder demand letters are collectively referred to herein as the "Demand Letter."

Offering");[4] (2) the suspension of the Fund's level-rate distribution policy (the "Suspension of Level-Rate Distributions"); and (3) the disposal and acquisition of Fund stock by a beneficial owner of more than ten percent of the Fund's outstanding common stock within a six-month period, which Plaintiff asserted violated Section 16(b) of the Exchange Act (the "Short-Swing Claim").  (*See* RJN, Exs. A, D.)  The Demand Letter contended that the Board's decisions approving the 2008 Rights Offering and the Suspension of Level-Rate Distributions were in the best interests of the Fund's controlling stockholder and the Fund's investment advisers and administrators.

**B.**    **The Challenged Transactions.**

1.    **The 2008 Rights Offering.**

A rights offering involves a company issuing rights to existing stockholders to purchase additional company shares at a given price within a fixed period.  (AC ¶ 23.) Following a successful rights offering in 2007, in early February 2008, the Fund's management proposed a one-for-three transferable rights offering priced at net asset value (*i.e.*, the 2008 Rights Offering).  (*Id.*)  On February 20, 2008, the Fund issued a press release announcing the 2008 Rights Offering.  (*Id.*)  The record date for the 2008 Rights Offering was on May 15, 2008, and the offering expired on June 20, 2008.  (*Id.* ¶¶ 25, 28.)  The 2008 Rights Offering was deemed a success by the Fund, as it was

---

[4] For the first time, Plaintiff also asserts that the Defendants breached their fiduciary duties by investing $50,000,000 of the proceeds obtained from the 2008 Rights Offering "in contravention of Boulder's Objective and the Rights Offering Objective."  (AC ¶ 39.)  Even if this assertion had been properly raised in the Demand Letter (which it was not), the Fund's relevant filings with the Securities and Exchange Commission ("SEC") expressly state that "[n]o assurance can be given that the Fund will achieve its investment objective" and that "for temporary defensive purposes, [the Fund may] allocate a higher portion of its assets to cash and cash equivalents."  (RJN, Ex. M at 7.)  Thus, Plaintiff's allegation is specious, at best.

over-subscribed and raised net proceeds of over $76 million for the Fund.  (*Id.* ¶ 28.)[5]

> ### 2.   **The Suspension of Level-Rate Distributions.**

In May 2006, the Fund adopted a level-rate distribution policy pursuant to which the Fund's common stockholders would receive a consistent, but not assured, periodic cash payment.  (*Id.* ¶ 13.)  On November 11, 2008, the Fund issued a press release announcing the Suspension of Level-Rate Distributions.  (*Id.* ¶ 48.)  The press release identified several of the reasons considered by the Board as a basis for the Board's action.  (*See* RJN, Ex. L.)  In the press release, defendant Looney added that:

> Suspending the policy was a very difficult decision; but we have to face the facts – the stock market is down 35% not only in the U.S., but in virtually every major market.  ***We are at a historic moment in the economic history of the U.S. Our first responsibility is to the Fund and the long-term interest of its stockholders.  The Board has concluded that suspending the Policy will better serve that long-term interest.***

(*Id.* at 1 (emphasis added).)

> ### C.   **The Board's Response to the Demand Letter.**

After receiving and reviewing the Demand Letter, the Board referred the matter to the Review Committee.  (AC ¶¶ 41, 43.)  The Board granted the Review Committee the full authority to act on behalf of the Board with respect to any action that the Review Committee deemed necessary and appropriate in connection with the Demand Letter.

---

[5] The Demand Letter also contained allegations regarding the Short-Swing Claim.  (AC ¶ 79; RJN, Ex. D.)  After the Review Committee conducted an investigation into the Short-Swing Claim, it determined that the EH Trust's acquisition of the Fund's stock during the period in question was through the 2008 Rights Offering.  (RJN, Ex. H at 5.)  The Fund informed Plaintiff that the EH Trust's acquisitions made pursuant to subscription rights constitute the exercise of a derivative security, and therefore are exempt from Section 16(b) pursuant to Securities and Exchange Commission's Rule 16b-6(b).  *See* 17 C.F.R. § 240.16b-6(b).  (*Id.*)  Plaintiff has not filed a Section 16(b) claim against the EH Trust.

(RJN, Ex. H at 1.)[6]  On October 12, 2009, the Board sent a letter to Plaintiff in response to his Demand Letter, informing Plaintiff that the Fund was investigating the claims he raised in the Demand Letter.  (*Id.*, Ex. B.)

The Review Committee Members are independent directors Looney, Jacobson, and Barr.  Under the Investment Company Act of 1940 (the "ICA"), Review Committee Members are not "interested persons" with respect to the Fund and its investment advisers.  (*Id.*, Ex. M at 10.)  Maryland law states that because the Review Committee Members are not "interested" persons under the ICA, they "shall be deemed to be independent and disinterested when making any determination or taking any action as a director."  Md. Code Ann. Corps. & Ass'ns § 2-405.3(b).

The Review Committee retained Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), as outside counsel to the Review Committee, to assist in its investigation of the allegations outlined in the Demand Letter, and to advise the Review Committee with respect to its findings and obligations.  (RJN, Ex. H at 1-2.)  Paul Hastings met separately with the Review Committee on multiple occasions to craft an investigation plan, to obtain necessary access to information, and to properly structure an overall plan to permit the investigation to proceed in a reasonable manner.  (*Id.*)  From October 2009 through January 2010, the Review Committee, with the assistance of counsel, performed a thorough investigation, reviewing thousands of pages of documents and meeting with and/or interviewing possible witnesses.  (*Id.*)

After the investigation was complete, the Review Committee exercised its

---

[6] Under Maryland law, the Board "may appoint a committee of disinterested directors to conduct this investigation."  *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. 2007).

business judgment, concluding that bringing legal action against members of the Board would not likely succeed on the merits because there was no evidence to support a claim that any Board members breached their fiduciary duties owed to the Fund.  (AC ¶¶ 80-81.)  Additionally, the Review Committee concluded that legal action against any members of the Board and/or the EH Trust was unlikely to result in any monetary recovery to the Fund and that such action was not supported from a "cost/benefit" analysis.  (RJN, Ex. H at 4-5.)  On January 29, 2010, the Review Committee sent Plaintiff a detailed letter informing him of the scope, process, and conclusions of the Review Committee's investigation.  (*See generally id.*)  Nevertheless, on April 14, 2010, Plaintiff filed the Verified Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment with this Court.  (Dkt. #1.)

## III.   ARGUMENT

### A.   Legal Standards Applied to Stockholder Derivative Actions.

#### 1.   Stockholder Derivative Actions.

The business and affairs of a corporation are managed under the direction of its board of directors.  *See Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001).[7] "Shareholders are not ordinarily permitted to interfere in the management of the company; they are the owners of the company but not its managers."  *Id.* It is

---

[7] For stockholder derivative actions, federal courts apply the demand requirement and the futility exception of the state of incorporation on whose behalf the derivative action is commenced. *See Kamen v. Kemper Financial Serv., Inc.*, 500 U.S. 90, 108-09 (1991) (applying Maryland law).  In this case, the Fund is incorporated in Maryland; therefore, Maryland law controls the scope of the demand requirement.  *See Halebian v. Berv*, 631 F. Supp. 2d 284, 291 (S.D.N.Y. 2007) ( "we look to the Federal Rules which set forth the procedural requirements that apply to the pleadings as well as the underlying state substantive law governing the viability of the derivative claims.  The law of the state of incorporation or organization governs the substantive requirements for a derivative action.").

"extraordinary" for stockholders to exercise the corporate powers derivatively.  *See id.*

Indeed, "[t]he fact that the action is on behalf of the corporation, rather than the

shareholder, has significant implications, not the least of which is the extent to which the

corporation can control the litigation after it is filed." *Id.*  Through this lawsuit, Plaintiff

impermissibly seeks to supplant his own business judgment for that of the Board.

By their very nature, stockholder derivative actions are subject to substantial

abuse, and courts routinely dismiss these "strike suits" on a motion to dismiss.  *Id.* at

138, 144.  Neither a corporation nor its directors should "be put unnecessarily at risk by

minority shareholders bent simply on mischief, who file derivative actions not to correct

abuse as much to coerce nuisance settlements." *Id.* at 144.  A stockholder derivative

action "could, if unconstrained, undermine the basic principle of corporate governance

that the decisions of a corporation – including the decision to initiate litigation – should

be made by the board of directors or the majority of shareholders." *Daily Income Fund,*

*Inc. v. Fox*, 464 U.S. 523, 531 (1984).  In order to ensure that bedrock corporate

principle is upheld, Maryland, like most states, requires a stockholder to "either make a

demand on the board of directors that the corporation bring the suit, or show that

demand is excused as futile." *Bender*, 917 A.2d at 152.[8]

### 2.    The Law of Demand Refusal.

The prerequisite of a demand on the Board is considered both procedural and a

_____

[8] As a technical matter, although Plaintiff verified the complaint originally filed in this action (*see* Dkt. #1 at p. 34), Plaintiff has not verified the content of the Amended Complaint (*see* Dkt. #11 at p. 34).  *See* Fed. R. Civ. P. 23.1(c) ("[t]he complaint must be verified").  Failure to verify the Amended Complaint is an additional reason Plaintiff's claims must be dismissed.  *See Glenbrook Capital Ltd. Partnership v. Kuo*, 525 F. Supp. 2d 1130, 1146 (N.D. Cal. 2007).

matter of Maryland substantive corporate law.  *See Werbowsky*, 766 A.2d. at 134; *Danielewicz v. Arnold*, 769 A.2d 274, 289-90 (Md. 2001).  Once a demand is made, the corporation's board of directors must conduct an investigation into the allegations and determine whether pursuing the demanded litigation is in the best interests of the corporation.  *Bender*, 917 A.2d at 152.  Courts are to "defer[] to the decision of the board or committee not to pursue litigation unless the stockholders can show either [1] that the board or committee's investigation or decision was not conducted independently and in good faith, or [2] that it was not within the realm of sound business judgment."  *Id.*  This case is one of demand refused pursuant to the good faith investigation of the Review Committee.  Under Maryland law, it is presumed that, in considering a stockholder demand, the Board acted independently, in good faith, and within the realm of sound business judgment.  *See id.* at 152-53.

### 3.  Pleading Requirements in Demand Refused Actions.

Although Maryland law controls the demand requirement and the futility exception, Rule 23.1 of the Federal Rules of Civil Procedure requires a plaintiff to plead either the futility exception or wrongful refusal of his demand with particularity.  When a Board rejects a plaintiff's demand, the "plaintiff must allege facts with particularity that create 'reason to doubt that the board acted independently or with due care in responding to the demand.'"  *Burns*, 241 F. Supp. 2d at 525.[9]

---

[9] *See also Levner v. Saud*, 903 F. Supp. 452, 458 (S.D.N.Y. 1994) ("bare conclusory allegations of wrongful refusal will not satisfy the pleading requirements of Rule 23.1"); *Mieuli v. Debartolo*, No. C-00-3225 JCS, 2001 WL 777447, at *12 (N.D. Cal. Jan. 16, 2001) (same); *Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1122 (D. Del. 1985) (same); James J. Hanks, Jr.,

**B.     Plaintiff Has Not Pled with Particularity that His Demand Was Wrongfully Refused.**

1.     **The Review Committee Acted Independently on the Demand**

Under Maryland law, stockholders who make a demand "are deemed to have waived any claim they might otherwise have had that the board ***cannot independently act*** on the demand." *Bender*, 917 A.2d at 152 (citation omitted).   By making the demand, Plaintiff has conceded the independence of the Board, and thereby the Review Committee, to act on his demand.[10]   Thus, any allegations in the Amended Complaint challenging the ability of the Board to act independently are without merit, legally precluded, and should not be considered as a result of the prior demand.   (*See, e.g.*, AC ¶ 84(a)-(f) (allegations that the Fund's Board could not act independently on the demand)); *see also Bender*, 917 A.2d at 153 n.2.

While Plaintiff "may still allege [] that the board in fact did not act independently," *Bender*, 917 A.2d at 152 (emphasis omitted), Plaintiff does not allege any facts to support such an assertion.   Instead, Plaintiff falsely alleges – based solely "[u]pon information and belief" – that "the Review Committee failed to retain independent outside counsel to assist in the investigation." (AC ¶ 85.)   From the outset, Plaintiff was well aware that Paul Hastings was assisting the Review Committee's investigation, and Plaintiff allowed the investigation to proceed without objection.   Paul Hastings has also

MARYLAND CORPORATION LAW § 7.21 at 276.10 n.191a (Aspen Supp. 2008) (hereinafter "Hanks") (same).

[10] In the Demand Letter, Plaintiff did not suggest that any of the independent directors, who comprised the Review Committee, had an interest in the challenged transactions. (RJN, Exs. A, D.)  Rather, Plaintiff named defendants Ciciora and Horejsi as Fund directors that may have an interest in the challenged transactions.   (*Id.*, Exs. A at 4, D at 3.)   Defendants Ciciora and Horejsi did not participate as members of the Review Committee.

been regular independent outside counsel to the Fund's independent directors (*i.e.*, the Review Committee Members).  In other words, the Review Committee members hired their independent outside counsel to assist on the matter in which the Review Committee Members are deemed independent.   (*See, e.g.*, RJN, Exs. at B-C.) Moreover, Plaintiff alleges no facts supporting the conclusory statement that Paul Hastings was not independent.  *See Allison*, 604 F. Supp. at 1122 (D.C. Del. 1985) ("More than mere intonation of black letter law for invalidating a board's exercise of business judgment must be contained in the amended complaint to avoid dismissal."); *In re Limited, Inc.*, No. CIV.A. 17148-NC, 2002 WL 537692, at *10 n.64 (Del. Ch. Mar. 27, 2002) (conclusory allegation regarding independence of counsel insufficient); *Madvig v. Gaither*, 461 F. Supp. 2d 398, 408 (W.D.N.C. 2006) (same).[11]

### 2. Under the Business Judgment Rule, the Court Must Defer to the Review Committee's Business Judgment to Refuse Plaintiff's Demand

Because independence is a non-issue here, the only remaining issue for the Court to consider is whether Plaintiff met his burden to rebut the presumption that the Review Committee Members acted reasonably and in the best interest of the Fund. *See Bender*, 917 A.2d at 153 (the burden is on the plaintiff to establish facts rebutting

---

[11] Furthermore, challenging the independence of counsel retained to assist in an investigation does not necessarily undermine the independence of an investigation.  *See* Hanks at 276.21-276.22 (citing *Costa Brava Partnership III L.P. v. Telos Corp.*, No. 24-C-05-009296, 2008 MDBT 4 (Md. Cir. Ct. Jan. 7, 2008)); *see also* E. Norman Veasey, Separate and Continuing Counsel for Independent Directors:  An Idea Whose Time Has Not Come As A General Practice, 59 Bus. Law. 1413, 1418 (2004) ("Most of the time, the general counsel and the regular outside counsel of the corporation are up to the task of providing the right advice.  Special outside counsel to the independent committees or the independent directors should be the exception, not the rule.").

the presumption that directors acted reasonably in rejected a demand).[12]   In order to do

so, Plaintiff must plead and prove that the Review Committee's investigation into the

Demand Letter was conducted in a grossly negligent manner.  *See id.*; *Halpert Enters.,*

*Inc. v. Harrison*, No. 07-1144-cv, 2008 WL 4585466, at *1 (2d Cir. Oct.15, 2008).  Here,

the Amended Complaint alleges no facts that rebut the presumption that the Review

Committee acted reasonably and in the best interests of the Fund.  *See Scalisi v. Grills*,

501 F. Supp. 2d 356, 362 (E.D.N.Y. 2007) ("absent facts that rebut the presumption of

reasonableness created by the business judgment rule, a Maryland court must defer to

the Committee's conclusions").[13]

In this case, Plaintiff's allegation challenging the reasonableness of the Review

Committee's investigation amounts to a single conclusory sentence, which does not

overcome the presumption in favor of the Review Committee's work.   (AC ¶ 86.)[14]

---

[12] The definition of gross negligence in the corporate breach of fiduciary duty context "is so strict that it imports the concept of recklessness into the gross negligence standard."  *See In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 n.45 (Del. Ch. 2008).

[13] Although Maryland law sets forth factors for determining the reasonableness of the Review Committee's investigation, the courts have been unwilling to provide a specific "formula" that a committee must follow in considering a demand.  Rather, courts have looked to the specific facts of individual cases to determine whether the committee followed reasonable procedures and was appropriately informed in making its decision.  *See, e.g.*, *Bender*, 917 A.2d at 156.

[14] Unless Plaintiff can overcome the presumption that the Review Committee conducted a reasonable investigation into the Demand Letter, he is not entitled to any additional information regarding the investigation, including the Review Committee's final report.  *See, e.g.*, *Knopf v. Semel*, No. C 08-3658 (PVT), 2010 WL 965308, at *8 (N.D. Cal. Mar. 17, 2010) (holding that a plaintiff who argues that "it is impossible to determine whether the Audit Committee's investigation was reasonable and whether the Board's decision to refuse the Demand was made on an informed basis" without production of the Audit Committee's final report "effectively concedes the deficiencies of his pleading"); *Lewis v. Hilton*, 648 F. Supp. 725, 727 n.1 (N.D. Ill. 1986) (because plaintiff was unable to plead facts to overcome the presumption in favor of the board of directors, the court denied discovery); *In re Boston Scientific Corp. S'holder Litig.*, No. 02 Civ. 247(AKH), 2007 WL 1696995, at *4-5 (S.D.N.Y. June 13, 2007) (denying plaintiff discovery that plaintiff asserted was necessary to plead facts pertaining to investigation);

Plaintiff alleges, based on "information and belief," that the Review Committee failed to issue any reports detailing the steps it took to investigate Plaintiff's demand. (*Id.*)  To the contrary, through a series of letters, the Review Committee provided Plaintiff with a detailed accounting of both the thorough steps it took to investigate his allegations and the conclusions that it drew after the investigation's completion.  (*See* RJN, Exs. B, E, G, H, J); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (court must accept a properly considered document over contradicting legal conclusions and factual allegations).   Indeed, after receiving the Review Committee's detailed letter, Plaintiff did not file a Short-Swing Claim against EH Trust, which further undermines his bald assertion that the Review Committee did not perform a reasonable investigation. (*See generally* AC; *see also* RJN, Ex. H.)

Notwithstanding the Review Committee's response, Plaintiff subsequently requested that the Review Committee provide him with additional materials so that "the Review Committee's analysis can be properly evaluated." (*See* RJN, Ex. I.)   In response, the Review Committee explained to Plaintiff that its decision was subject to the business judgment rule, and unless he provided an adequate basis to challenge the reasonableness of the Review Committee's investigation, "there [was] nothing more to evaluate," including the Review Committee's final report.  (*See id.*, Ex. J at 1; *see also* Footnote 14 *supra*.)    Thus, Plaintiff's unverified, unsubstantiated, and factually

---

*Bezirdjian v. O'Reilly*, 183 Cal. App. 4th 316, 326-28 (2010) (refusing plaintiff's request for discovery of "Committee's report and the materials that the Committee relied on in refusing his demand" because plaintiff "failed to clear the initial hurdle of an adequate pleading so as to provide a basis for discovery"); *Levine v.* Smith, 591 A.2d 194, 208-09 (Del. 1991); *Tomran, Inc. v. Passano*, 862 A.2d 453, 457 n.5 (Md. 2004).

misguided allegation does not and cannot demonstrate that the Review Committee's investigation was grossly negligent.  *See Werbowsky*, 766 A.2d. at 144 (directors are protected by "the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing").

## C.    <u>Plaintiff Has Not Adequately Pled Claims for Breach of Fiduciary Duty and Unjust Enrichment.</u>

Although Plaintiff's right to maintain this action is barred under Maryland law, the Amended Complaint must also be dismissed because Plaintiff's breach of fiduciary duty and unjust enrichment claims are not sufficiently pled.  In *Bell Atl. Corp. v. Twombly*, the Supreme Court held that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a plaintiff allege **facts** establishing that a claim is not merely conceivable, but actually plausible.  127 S. Ct. 1955, 1964-65 (2007) (allegations of ambiguous behavior are not enough to properly state a claim).   In this case, Plaintiff's allegations do not satisfy the Rule 8 pleading requirements.

### 1.    **Plaintiff Has Not Adequately Pled a Breach of Fiduciary Duty Claim Against the Defendants.**

Under Maryland law, the elements of breach of fiduciary duty are:   "(1) the existence of a fiduciary relationship, (2) a breach of duty owed by the fiduciary to the beneficiary, and (3) harm resulting from the breach."  *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1046 (Md. 1995).   Here, Plaintiff fails to establish a plausible claim that the Defendants' breached any fiduciary duty.

First, Plaintiff fails to articulate a fiduciary duty breached by the Defendants.   All decisions made by the Defendants are subject to the business judgment rule, which

protects directors from liability to the corporation and its stockholders by insulating their business decisions from judicial review, absent a showing of fraud, self-dealing, unconscionable conduct, or bad faith.  *See NAACP v. Golding*, 679 A.2d 554, 559 (Md. 1996).  Plaintiff's allegations regarding the 2008 Rights Offering and the Suspension of Level-Rate Distributions, which were both lawful decisions of the Fund's Board, do not contain any facts overcoming the Defendants' business judgment.  Instead, Plaintiff speculates – through conclusory allegations – that the Defendants did no act in the best interests of the Fund merely because Plaintiff disagrees with the Defendants' management decisions with respect to the Fund.  (AC ¶¶ 57, 68 (the Defendants pursued "unsound practices").)  But without any facts substantiating Plaintiff's allegations, the Amended Complaint does not meet the pleading requirements established under *Twombly* and its progeny.  *See Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Second, Plaintiff fails to allege any harm to the Fund.  Plaintiff contends that "failing to prudently invest the $50,000,000 obtained through the Rights Offering . . . insured Boulder's **market price** would be driven down" and the Board's decision to approve the Suspension of Level-Rate Distributions "caused the destruction of Boulder's **market price**."  (AC ¶ 91 (emphasis added).)  But a decline in the Fund's market price (*i.e.*, share price) is not indicative of harm to a closed-end investment fund. Indeed, the Amended Complaint correctly explains that the Fund's actual value is based on its net asset value ("NAV"), which is calculated by dividing the total value of all the securities in the Fund's portfolio (less any liabilities) by the number of the Fund's shares

outstanding.  (*Id.* ¶ 22.)  So while Plaintiff has alleged diminution in the share price of the Fund, he has not alleged that the Board's purported breaches caused harm to the Fund itself.  *See Mona v. Mona Elec. Group, Inc.*, 934 A.2d 450, 465 (Md. 2007) ("recovery in a shareholder's derivative suit is in favor of the corporation").

Accordingly, Plaintiff has failed to allege a claim for breach of fiduciary duty on behalf of the Fund, and the claim must be dismissed.  *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 423 (Md. 2009) ("the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation").[15]

### 2.   **Plaintiff Has Not Adequately Pled an Unjust Enrichment Claim Against the Review Committee Members.**

Under Maryland law, a claim of unjust enrichment consists of three elements: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant accepts or retains the benefit "under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).  Here, Plaintiff fails to allege that the Fund unjustly bestowed any benefit on the Review Committee Members.

Plaintiff alleges that "the Insiders" (*i.e.*, defendants Ciciora and Horejsi) improperly benefited from the challenged transaction because of their affiliation with EH Trust and the Fund's investment advisers and administrators.  (AC ¶¶ 20, 94, 97.)  Yet, nowhere in the Amended Complaint does Plaintiff even attempt to allege that the

---

[15] Put differently, even if Plaintiff successively proved all other elements of his breach of fiduciary claim, there would be no remedy available because the Fund has not been damaged.

Review Committee Members received any improper benefit as a result of the alleged conduct.  (*See generally* AC); *see also State v. Philip Morris Inc.*, No. 96122017, CL211487, 1997 WL 540913, at *6 (Md. Cir. Ct. May 21, 1997) (a plaintiff must "allege a benefit conferred on Defendants that is not speculative in order to sustain a cause of action for unjust enrichment").  Thus, Plaintiff's claim for unjust enrichment must also be dismissed against the Review Committee Members.

IV.    **<u>CONCLUSION</u>**

For the reasons set forth above, the Review Committee Members respectfully request that the Court dismiss all claims asserted in the Amended Complaint.

Dated:  June 25, 2010                    Respectfully Submitted,

By:  <u>s/ William F. Sullivan</u>

William F. Sullivan
Joshua G. Hamilton
D. Scott Carlton
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071-2228
Telephone:  (213) 683-6000
Facsimile:    (213) 627-0705
E-mail:        williamsullivan@paulhastings.com

Christian H. Hendrickson
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202-3622
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940
E-mail:  chendrickson@shermanhoward.com

*Attorneys for Nominal Defendant Boulder Growth and Income Fund, Inc. and Defendants Joel W. Looney, Dean L. Jacobson, and Richard I. Barr*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010, I electronically filed the foregoing

Memorandum of Law In Support Of Motion To Dismiss Pursuant to F.R.C.P. 8(a),

12(b)(6), and 23.1 with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following e-mail addresses:

Kip Shuman
kip@shumanlawfirm.com
Attorney for Plaintiff
Denis Ryskamp


Matthew Groves
mgroves@messner.com
Attorney for Defendants
Susan L. Ciciora and John S. Horejsi



By:  s/ William F. Sullivan

*Attorney for Nominal Defendant Boulder Growth and
Income, Inc. and Defendants Joel W. Looney, Dr. Dean L.
Jacobson, and Richard I. Barr*