IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-CV-00842 CMA-KLM

DENIS RYSKAMP, Derivatively on Behalf of
BOULDER GROWTH AND INCOME FUND, INC.

    Plaintiff,

v.

JOEL W. LOONEY;
DEAN L. JACOBSON;
RICHARD I. BARR;
JOHN S. HOREJSI; and
SUSAN L. CICIORA;

    Defendants,

and

BOULDER GROWTH AND INCOME FUND, INC.

    Nominal Defendant

**DEFENDANTS' HOREJSI AND CICIORA'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(6) and 23.1(a)**

Defendants John S. Horejsi and Susan L. Ciciora (collectively the "Interested Defendants"), by and through their counsel Messner & Reeves, LLC, hereby submit their Motion to Dismiss, and state as follows:

**I.**    **INTERESTED DEFENDANTS JOIN AND INCORPORATE NOMINAL DEFENDANT/COMMITTEE MEMBER DEFENDANTS' MOTION TO DISMISS**

For the reasons set forth in Nominal Defendant Boulder Growth and Income Fund, Inc. and The Review Committee Members' Motion to Dismiss ("Review

Committee Members' Motion to Dismiss"), which is expressly incorporated herein, this Court should dismiss Plaintiff's Amended Complaint.

## II. SUMMARY OF ARGUMENT

Plaintiff brings this action in an unwarranted attempt to usurp the power of the Board of Directors of the Boulder Growth and Income Fund, Inc. ("Boulder") to manage Boulder's business. Plaintiff, who alleges he owns a total of 141.111 shares of Boulder common shares (roughly .0005525% of Boulder's outstanding stock) for which he allegedly spent a grand total of thirteen hundred fifty dollars and forty-seven cents ($1,350.47), seeks to take control of the business decisions of Boulder, a Maryland corporation doing business in Colorado, based on conclusory allegations that Boulder's Board of Directors is not independent. In addition to the other grounds set forth in the Review Committee Members' Motion to Dismiss, Plaintiff's attempt must fail for three reasons:

1. Plaintiff concedes the Independent Review Committee, which rejected Plaintiff's demand, was and is independent. For this reason, this Court should defer to the Independent Review Committee's decision not to pursue this litigation, and therefore should dismiss the Amended Complaint.

2. Plaintiff fails to allege that the Defendants wrongfully received any benefit, and as such fails to plead a necessary element of its causes of action.

3. Plaintiff's Amended Complaint focuses on harm to a third party. From an examination of the demand letters delivered to Boulder by Plaintiff and the Amended Complaint itself, the Court can only conclude that Plaintiff is acting as a proxy for this third party, the so-called Doliver Group ("Doliver"). As such, Plaintiff cannot be a suitable representative of Boulder or its shareholders.

### III.    <u>STANDARD OF REVIEW</u>

"[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations omitted). "While, generally, only the complaint and its allegations are considered in a motion to dismiss, documents referred to in the complaint may be considered at the motion-to-dismiss stage if they are 'central to the plaintiff's claim' and their authenticity is undisputed." *Phillips v. Bell*, No. 08-1420, 2010 WL 517629, at * 3 (10th Cir. Feb. 12, 2010).

"The Supreme Court recently retired the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ivar v. Elk River Partners, LLC*, --- F. Supp. 2d ---, No. 09-CV-00453-CMA-CBS, 2010 WL 1348367, at *3 (D. Colo. Mar. 30, 2010) (J. Arguello). "In *Twombly* and, more recently, *Ashcroft v. Iqbal*… the Court prescribed a new inquiry for courts to use in reviewing a dismissal:  whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Id.* (internal citation omitted).  To survive a motion to dismiss, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Id.* (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphasis in original).

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Iqbal*, 129 S. Ct. at 1940). A complaint must go beyond labels, conclusions, formulaic recitations of elements, and "naked assertions devoid of further factual development." *Id.* In ruling on a motion to dismiss, once a court has identified the well plead facts in a complaint, it must determine if the complaint "states a *plausible* claim for relief." *Iqbal*, 129 S.Ct. at 1950 (emphasis added). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. THE INDEPENDENT REVIEW COMMITTEE PROPERLY EXERCISED ITS JUDGMENT AND REJECTED PLAINTIFF'S DEMAND

"Generally, the business and affairs of a corporation, including the decision to institute litigation, are managed under the direction of its board of directors." *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007). "Before bringing a derivative suit in Maryland or Delaware, the shareholder must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile." *Id.* "Once a demand is made, the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation." *Id.* "The board may appoint a committee of disinterested directors to conduct this investigation." *Id.* As Plaintiff concedes, this is exactly what happened in this case – the Review Committee was given full authority to act on behalf of the Board with respect to any action that the

Review Committee deemed necessary and appropriate in connection with the Demand Letter and the Interested Directors played no role whatsoever in the Review Committee's investigation of Plaintiff's Demand. (*See* Am. Compl., Dk. No. 11, ¶ 84.)

"By making a demand, the shareholder(s) are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand." *Id.*[1] Indeed, Maryland law provides that under these circumstances the Review Committee's decision is presumptively conclusive unless Plaintiff pleads particularized facts that create a reasonable doubt that the Review Committee acted unreasonably in responding to his demand. *Id.* "**A stockholder must show more than mere suspicion and must state a claim in *particular*, rather than conclusory terms.**" *Id.* (emphasis added); *see also* Fed. R. Civ. P. 23.1(b)(3); *see also Burns v. Friedli*, 241 F. Supp. 2d 519, 525 (D. Md. 2003).[2] Therefore, Plaintiff's pleading burden for establishing wrongful refusal of his demand is substantially higher than that required than under Rule 8. More importantly, like *Bender*, Rule 23.1 requires that a derivative plaintiff "state with particularity" the why demand was made and "the reasons for not obtaining the action."[3] Fed. R. Civ. P. 23.1(b)(3); *see also Burns v. Friedli*, 241 F. Supp. 2d 519, 525 (D. Md. 2003). Because Plaintiff fails to state with particularity any factual allegations

---

[1] At any rate, the Interested Defendants took no part in the Review Committee's investigation, deliberations, or conclusions with respect to Plaintiff's demand. Therefore, even if Plaintiff did not waive his opportunity to challenge the independence of the Board, he would have little basis to question the independence of the Review Committee and its investigation of his demand.

[2] When addressing a sufficiency of pleading demand and wrongful refusal thereof, "Federal law controls in determining whether the allegations in the complaint are particular enough, while state substantive law determines whether the [plaintiff has complied with the demand requirements]." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1019 (D. Kan. 2003) (citing *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991)).

[3] When addressing a sufficiency of pleading demand and wrongful refusal thereof, "Federal law controls in determining whether the allegations in the complaint are particular enough, while state substantive law determines whether the [plaintiff has complied with the demand requirements]." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1019 (D. Kan. 2003) (citing *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991)).

with respect to the Independent Review Committee's refusal of his Demand, this Court should dismiss the Amended Complaint.

Plaintiff's factual allegation with respect to the Independent Review Committee's refusal of his demand merely consists of the assertion that a demand was made and refused. (Am. Compl., Dk. No. 11, ¶¶ 79, 80.) Plaintiff further alleges that the Independent Review Committee refused to provide "information relating to shareholder proposals", but fails to identify in even the most general terms when this information was requested, and fails to establish or assert that Plaintiff had a right to this information. (Id., ¶ 81.) Finally, Plaintiff alleges that the Independent Review Committee refused to provide "certain information and documents," but does not identify any reason the Independent Review Committee was obligated to turn over to Plaintiff the allegedly requested materials. (Id., ¶¶ 82, 83.) The remainder of Plaintiff's attack on the Independent Review Committee is entirely conclusory. Plaintiff provides this Court with precisely the type of naked conclusions and speculation rejected by Rule 23.1(b)(3).

Plaintiff's conclusory allegations are simply insufficient to state with a claim for wrongful demand refusal under Maryland law and fall far short of the particularity required by both Maryland and the Federal Rules of Civil Procedure. "By making a demand, the shareholders are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand." *Bender*, 917 A.2d at 152. Therefore, Plaintiff, by making a demand on Boulder, waived the claim that the Independent Review Committee is incapable of acting independently. For this reason,

Paragraph 84 of the Amended Complaint is completely irrelevant, as it focuses on the claims that the Independent Review Committee was not independent.

To overcome the presumption in favor of the Review Committee, Plaintiff must allege facts supporting a conclusion that "either the board or committee's investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment." *Id.* However, as discussed above, Plaintiff provides only naked conclusions that the Independent Review Committee wrongly refused the demand. These naked conclusions are simply insufficient to survive a motion to dismiss, and this Court should dismiss the Amended Complaint.

### V. PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORTS ITS CONCLUSION THAT BOULDER WAS HARMED OR THAT THE INTERESTED DIRECTORS WERE ENRICHED

An essential element of a claim for breach of fiduciary duty is that the plaintiff proves "that it was damaged by the trustee's breach of that duty." *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1046 (Md. 1995); *see also Grynberg v. Total S.A.*, 538 F.3d 1136, 1346-47 (10th Cir. 2008). This element can be satisfied if plaintiff proves that defendant wrongfully obtained a benefit from their breach of duty to the plaintiff. *Grynberg v. Total S.A*, 538 F.3d. at 1137 (citing Restatement (Second) of Torts § 874 cmt. b (1976) and Colo. Jury Instrs., Civ. Ch. 26:5(2)(a), (c) (4th Ed. 2007)). Likewise, an essential element of an unjust enrichment cause of action is that the defendant receives and retains some benefit. *Royal Inv. Group, LLC v. Want*, 961 A.2d 665, 684 (Md. Ct. Spec. App. 2008)(citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (2007)); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).

Plaintiff fails to allege sufficient facts to demonstrate that any Defendants wrongfully obtained *any* benefit from their alleged breach of fiduciary duty or alleged wrongful acts. In fact, Plaintiff's allegations focus almost entirely on the alleged power struggle between Doliver and a number of trusts such as the LB Trust, the EH Trust, and the Stewart West Indies Trust for the right to manage and control the fees paid by Boulder to its investment advisors. Plaintiff's only way to tie these trusts to the Interested Directors is to note that the Interested Directors are "discretionary beneficiaries" of these trusts. (Am. Compl. Dk. No. 11, ¶¶ 16, 17, 18.) This allegation, however, supports only speculation as to whether or not the Interested Directors wrongfully obtained any benefit from their alleged breach of fiduciary duty.

A discretionary trust is a "trust in which the trustee alone decides whether or how to distribute the trust property or its income to the beneficiary. The beneficiary, in other words, **has no say in the matter**." Black's Law Dictionary 1226 (7th Ab. Ed. 2000) (emphasis added). Maryland law is clear that discretionary trusts do not confer a right to the profits or corpus of the trust beyond what the trustee chooses. *See First Nat. Bank of Maryland v. Dept. of Health and Mental Hygene*, 399 A.2d 891, 896 (Md. 1979). Plaintiff speculates that this arrangement has benefited the Interested Directors, but cannot allege any fact to substantiate that speculation. This is simply insufficient under the pleading standards announced in *Twombly* and *Iqbal*. Because Plaintiff fails to meet the pleading standards of *Twombly* and *Iqbal*, this Court should dismiss Plaintiff's Amended Complaint.

## VI. **PLAINTIFF CANNOT ADEQUATELY AND FAIRLY REPRESENT BOULDER OR ITS SHAREHOLDERS**

"[T]he derivative form of action permits an individual shareholder or group of shareholders to bring suit to enforce a *corporate* cause of action against officers, directors, and third parties where those in control of the company refuse to assert a claim belonging to it." *Bender*, 917 A.2d at 152. "If the wrong alleged was committed against the stockholder rather than the corporation, then the stockholder must bring the action as a direct action – either individually or as a representative of a class – and not as a derivative action." *Id.*

"The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the rights of the corporation or association." Fed. R. Civ. P. 23.1(a). "The issue of adequate representation is entrusted to the sound discretion of a district court." *Shoregood Water Co., Inc. v. U.S. Bottling Co.*, No. RBD 08-2470, 2009 WL 2461689, * 4 (D. Md. August 10, 2009). Factors that guide a court's discretion in analyzing whether a plaintiff is an adequate representative include:

1. **economic antagonisms between representative and class;**
2. the remedy sought by plaintiff in the derivative action;
3. **indications that the named plaintiff was not the driving force behind the litigation**;
4. plaintiff's unfamiliarity with the litigation;
5. other litigation pending between the plaintiff and defendants;
6. **the relative magnitude of the plaintiff's personal interest as compared with his interest in the derivative action itself**;

7. **plaintiff's vindictiveness toward the defendants**; and finally,

8. **the degree of support plaintiff was receiving from the shareholders he purported to represent.**

*Id.*, at *5 (emphasis added).

The Amended Complaint fails to go beyond the naked conclusion that Plaintiff will "adequately and fairly represent the interests of Boulder." (Am. Compl., Dk. No. 11, ¶ 77.) However, when this Court "draw[s] on its judicial experience and common sense" as it must in reviewing the plausibility of the Amended Complaint and the documents incorporated therein, *Iqbal*, 129 S.Ct. at 1950, the only conclusion to be drawn is that Plaintiff does not in fact fairly and adequately represent the interests of Boulder's shareholders.  Instead, the only explanation for Plaintiff's actions and constant references in the Amended Complaint to the Doliver group is that Plaintiff is in fact using this action as a tool to further Doliver's interests.

Plaintiff's personal interests, and the interests of Doliver, are grossly disproportionate to Plaintiff's interests in the derivative action.  The correspondence referenced in the Amended Complaint shows that Plaintiff alleges he owns 141.11 shares of "Boulder Group and Income Fund, Inc." (Oct. 16, 2009 Letter, attached as **Exhibit A**.)  Assuming this reference is actually to "Boulder Growth and Income Fund, Inc.", Plaintiff owns a total of .0005525% of Boulder's 25,540,000 total shares of stock. With respect to the Rights Offering that forms the basis of much of Plaintiff's Amended Complaint, Plaintiff invested a grand total of $228.90, substantially less than the filing fee for the instant action. (Oct. 16 Letter, attached as **Exhibit A**.)

Doliver, on the other hand, held millions of dollars worth of Boulder stock during the key time period in question, and as noted in the Amended Complaint even sought to take voting control of Boulder. (Am. Compl., Dk. No. 11, ¶¶ 30-39.) As alleged in the Amended Complaint, Doliver attempted to take control of Boulder by acquiring sufficient shares to allow it to dictate who could serve on Boulder's Board. (Id.) Doliver hoped that after it installed its own board of directors, it could force Boulder to continue paying out substantial dividends despite the unprecedented credit and real estate markets of 2008 and 2009. (See Id., ¶ 37.) Not coincidentally, the specific damages Plaintiff outlines in the Complaint were not suffered by Boulder, but were suffered by Doliver. (Id., ¶¶ 30-33, 35-39, 46, 54, 58-59, 62-63, 66, 69, 72, 74, 91, 94, 97.) For example, Plaintiff alleges that "[t]he Board's decisions have enabled the EH Trust to accomplish its objectives of . . . buying out Doliver's shares of Boulder at a steep discount in order to defeat Doliver's challenge to the EH Trust for control of Boulder" and claims the Defendants' "actions also caused Doliver's shareholders . . . to suffer severe losses in market price." (Id., ¶ 46, 91.)

Plaintiff's September 22, 2009 Demand letter makes it clear that Plaintiff is not proceeding with the interests of the shareholder's or Boulder in mind, but rather sought only to further Doliver's interests. Plaintiff demanded that Boulder "order[] the private sale of all BIF shares purchased by Horejsi-affiliated Trusts since the suspension of Fund distributions." (Demand Letter, attached as **Exhibit B**.)

*Only one* group would benefit from the course of action Plaintiff demanded from Boulder – Doliver. If the Horejsi-affiliated trusts were forced to sell the shares as

Plaintiff demanded, Doliver would be in a position to purchase a controlling stake in Boulder. Doliver would then, as stated in its Amended Complaint, elect "alternative directors to Boulder's Board, terminat[e] Boulder's co-advisory contract with BIA and continu[e] an aggressive level-rate distribution policy." (*See* Am. Compl., Dk. No. 11, ¶ 37.) Doliver has a unique interest in this outcome, as Plaintiff notes in the Amended Complaint, because it would take control both of Boulder itself and the fees paid to Boulder's investment advisors. (Id., ¶ 31.)

The plain language of the Amended Complaint clearly establishes that Plaintiff brought this action as the proxy of Doliver, and brought this action solely to further the personal interests of Doliver. Therefore, this Court, drawing as it must on its "judicial experience and common sense," should find that Plaintiff is not the fair and adequate representative required by Rule 23.1(a), and should dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(6) and 23.1.

Respectfully submitted this **25th** day of June, 2010

**MESSNER & REEVES, LLC**

*/s/ Matt Groves*
Matthew R. Groves, Esq., #27315
Bruce A. Montoya, Esq., #14233
Edward J. Hafer, Esq., #40230
MESSNER & REEVES, LLC
1430 Wynkoop Street, Suite 300
Denver, CO  80202
Telephone:   (303) 623-1800
Facsimile:   (303) 623-0552
mgroves@messner-reeves.com
ehafer@messner.com
**Attorneys for Defendants John S. Horejsi and Susan L. Ciciora**

## CERTIFICATE OF SERVICE

I certify that on this **25th** day of June, 2010, a true and correct copy of the foregoing **DEFENDANTS' HOREJSI AND CICIORA'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(6) and 23.1(a)** was filed and served via CM/ECF on the following:

Christian H. Hendrickson, Esq.
SHERMAN & HOWARD L.L.C.
chendrickson@shermanhoward.com
*Attorneys for Nominal Defendant Boulder Growth and Income, Inc. and Defendants Joel W Looney, Dr. Dean L. Jacobson, and Richard J Barr*

William F. Sullivan, Esq.
Joshua G. Hamilton, Esq.
D. Scott Carlton, Esq.
PAUL, HASTINGS, JANOFSKY, & WALKER, LLP
williamsullivan@paulhastings.com
*Attorneys for Nominal Defendant Boulder Growth and Income, Inc. and Defendants Joel W Looney, Dr. Dean L. Jacobson, and Richard J Barr*

Kip B. Shuman, Esq.
Rusty E. Glenn, Esq.
The Shuman Law Firm
kip@shumanlawfirm.com
rusty@shumanlawfirm.com
*Attorneys for Plaintiff Denis Ryskamp*

　　　　　　　　　　　　　　　　　　　　*/s/ Danielle Garduno*
　　　　　　　　　　　　　　　　　　　　Danielle Garduno