IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00842-CMA-KLM

DENIS RYSKAMP, Derivatively on Behalf of BOULDER GROWTH & INCOME FUND,

　　　　Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
SUSAN L. CICIORA, and
JOHN S. HOREJSI,

　　　　Defendants,

and

BOULDER GROWTH & INCOME FUND, INC.,

　　　　Nominal Defendant.
_____

## ORDER ON MOTIONS TO STAY
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's Motion to Stay Consideration of Defendants' Motion to Dismiss to Allow for Limited Discovery on the Independence and Investigation of the Review Committee** [Docket No. 38; Filed July 16, 2010] ("Plaintiff's Motion"). I have reviewed the Plaintiff's Motion, Defendants Horejsi and Ciciora's Response to Motion to Stay [Docket No. 46], Nominal Defendant Boulder Growth and Income Fund, Inc. and the Review Committee Members' Opposition to Plaintiff's Motion to Stay Consideration of Defendants' Motion to Dismiss to Allow for Limited Discovery on the Independence and Investigation of the Review Committee [Docket No.

1

47], and Plaintiff's Reply in Support of Motion to Stay Consideration of Defendants' Motions to Dismiss to Allow for Limited Discovery on the Independence and Investigation of the Review Committee [Docket No. 48]. Also before the Court is **Nominal Defendant Boulder Growth and Income Fund, Inc. and the Review Committee Members' Motion to Stay Discovery** [Docket No. 54; Filed September 14, 2010], Plaintiff's Opposition to Defendants' Motion to Stay Discovery [Docket No. 58], and Nominal Defendant Boulder Growth and Income Fund, Inc. and the Review Committee Members' Reply in Support of Motion to Stay Discovery [Docket No. 59].[1] In addition, I reviewed the case file and the relevant law and am advised in the premises. The motions are ripe for resolution.

## I.  Background

This is a shareholder derivative action brought by Plaintiff Denis Ryskamp on behalf of Boulder Growth and Income Fund, Inc. ("Boulder") and against Boulder's Board of Directors (the "Board") for breach of fiduciary duty and unjust enrichment. *Amended Complaint* [#11] ¶ 1. The facts that follow are alleged in the Amended Complaint: Boulder is a closed-end fund with the stated objective of concentrating investment in real estate investment trusts and other registered closed-end income funds. *Id.* at ¶3. Defendants are members of the Board . *Id.* ¶¶ 5-9.

Boulder is managed by Boulder Investment Advisers LLC ("BIA") and Stewart Investment Advisers ("SIA"), which are paid a combined fee of 1.25% of Boulder's assets under management. Id. ¶ 15-17. Stewart Horejsi, father of both "Insiders," Defendants Ciciora and Horejsi, manages BIA and SIA. Boulder is administered by Fund Administrative Services, LLC ("FAS"). FAS is paid an annualized fee of 0.20% of Boulder's assets under management. *Id.* ¶ 15. The fees collected by BIA, SIA, and FAS total approximately

---

[1] Defendants Horejsi and Ciciora have joined in the Motion [Docket No. 60].

$2,678,528.79 per year. As discretionary beneficiaries of BIA, SIA, and FAS, the Insiders benefit financially from the contractual relationships between Boulder and BIA, SIA, and FAS and it is in the Insiders' best interests to increase assets under management, thus increasing the advisory fees. *Id.* ¶ 15-21.

On February 20, 2008, the Board announced a rights offering of common stock to existing shareholders. *Id.* at ¶ 23. Shortly after the rights offering was completed in June 2008, Doliver Capital Advisors, L.P. ("Doliver"), a competing closed-end fund adviser, "blindsided" Boulder's Control Shareholder, the Ernest Horejsi Trust No. 1B ("EH Trust"), by filing a Schedule 13-G announcing that it was Boulder's largest shareholder, holding 16.9% of the outstanding stock. *Id.* at ¶30. Thus, Doliver had become a significant threat to the EH Trust's control, the Board's retention of their seats, and the fees generated by Boulder's contracts with BIA, SIA, and FAS.

After discovering that Doliver was now Boulder's largest shareholder, the Board and its advisors caused $50 million of the $76,166,466.08 raised in the rights offering to be invested in cash equivalents guaranteed to under-earn Boulder's expense ratio, even though the overall decline in the economy of the United States produced a number of attractively priced companies in which Boulder could have prudently invested and realized a better return. *Id.* at ¶49. The rights offering and subsequent investment of the proceeds in cash equivalents caused Boulder's share price to drop, but increased assets under management and increased fees to Insider affiliates BIA, SIA, and FAS. *Id.* ¶ 54.

In November 2008, the Board suspended the level-rate distribution policy, which eradicated previously-paid monthly payments to shareholders. *Id.* ¶ 52. Simultaneously with the Board's suspension of distributions, the EH Trust began purchasing the artificially depreciated Boulder shares in a bid to regain its control position. Since November 2008,

3

the EH Trust has purchased over five million shares at the depressed price of $28,580,626.00. *Id.* ¶ 45.

According to Plaintiff, the Board took aggressive action to drive down the share price of Boulder, to the detriment of Boulder and its shareholders by the loss of tens of millions of dollars, so the EH Trust could purchase Boulder stock at artificially reduced prices to fight off Doliver's bid for control, which threatened the financial interests of the Board. *Id.* ¶ 50. On September 22, 2009, Plaintiff sent the Board a demand letter requesting that the Board investigate certain actions. *Id.* ¶ 79. The actions challenged pertain to: (1) the Board's approval of a one-for-three transferable rights offering priced at net asset value; (2) the suspension of the Fund's level rate distribution policy; and (3) the disposal and acquisition of Fund stock by a beneficial owner of more than ten percent of the Fund's outstanding common stock within a six-month period. *Id.* at ¶¶ 3-39. Plaintiff alleged that the Board's decisions were not in the best interest of the Fund's shareholders and breached its fiduciary duty. *Id.* ¶ 57.

On December 14, 2009, counsel for the Board wrote that a Review Committee had been convened to review Plaintiff's demand. *Id.* ¶ 41. Defendants Looney, Barr and Jacobson were members of the Review Committee. *Id.* On December 17, 2009, Plaintiff sent the Review Committee a detailed letter requesting information about the Review Committee and the scope of its investigation. *Id.* ¶ 42. On December 22, 2009, the Review Committee refused to provide any of the information requested, going so far as to suggest that answering Plaintiff's questions would be inappropriate.

On January 29, 2010, the Review Committee issued a letter stating that the Review Committee had investigated Plaintiff's claims and decided not to take legal action. *Id.* at ¶ 43. The letter revealed that the Review Committee was composed of three purportedly

4

independent directors, Defendants Looney, Barr, and Jacobson, and that the Board granted full authority to the Review Committee to act on behalf of the Board with regarding to Plaintiff's demand. *Id.* ¶ 41.

On February 23, 2010, Plaintiff requested that the Board provide certain information and documents so that Plaintiff could decide whether the Review Committee's investigation was conducted independently, in good faith, and with sound business judgment. *Id.* ¶ 82. The Board refused to provide any of the requested information. *Id.* Plaintiff then brought this action alleging claims for breach of fiduciary duty and unjust enrichment.

## II. Analysis

There are two motions for a stay pending before the Court. Plaintiff seeks a stay of the Court's ruling on Defendants' pending Motions to Dismiss to allow for discovery regarding the Review Committee's investigation. He asserts that he must have this information in order to properly respond to Defendants' Motions to Dismiss [Docket Nos. 32 & 38].[2] Defendants move for a stay of discovery pending the decision on the Motions to Dismiss. In sum, Plaintiff *seeks* discovery and Defendants want to *stay* discovery.

As a prerequisite to a shareholder derivative suit under Maryland law, the shareholder must either make a demand on the Board of Directors that the Board bring suit, or show that demand is excused as futile. *See generally Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-98 (1991).[3] After a demand is made by the shareholder, the Board must conduct an investigation and determine whether pursuing the demand is in the best interest of the

---

[2] Since the filing of his Motion, Plaintiff has filed responses to the Motions to Dismiss [Docket Nos. 42 & 43].

[3] In shareholder derivative actions, the federal courts apply the demand and futility requirements of the law of the state in which the corporation is incorporated. *Kamen*, 500 U.S. at 108-09. Boulder is incorporated in Maryland. *Amended Complaint* [#11] ¶ 4.

5

corporation. *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. 2007). The Board may appoint a committee comprised of disinterested directors to conduct the investigation. *Id.* If the Board ultimately determines not to take the action requested by the shareholder, he may bring suit alleging that the Board did not act independently or that the demand was wrongly refused. *Id.*

Plaintiff seeks a stay of any ruling on Defendants' Motions to Dismiss so that he may conduct discovery. He seeks discovery relating to the Review Committee's investigation, which he argues was not made independently and in good faith. Plaintiff asserts that this information is necessary to a determination of the dismissal motions. [# 38] at 15.

Plaintiff does not have a right to discovery in order to respond to a motion to dismiss. "Federal courts routinely evaluate allegations of wrongful refusal of shareholder demand at the pleadings stage and in the context of a motion to dismiss." *In re Boston Scientific Corp. S'holders Litig.*, No. 02 Civ. 247 (AKH), 2007 WL 1696995, at *5 (S.D.N.Y. Jun. 13, 2007) (unpublished decision). Derivative plaintiffs are not entitled to discovery to assist their compliance with Fed. R. Civ. P. 23.1, which governs derivative actions. *See In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3rd Cir. 2007) (citation omitted). Otherwise, a plaintiff could file an insufficient complaint and use discovery to establish the particularity requirement for stockholder derivative actions. *See id.* (citation omitted). A stockholder derivative action must survive a motion to dismiss before Plaintiff is entitled to discovery. *See Make a Difference Found., Inc. v. Hopkins*, No. 10-cv-00408, 2010 WL 2197354, at *1-2 (D. Colo. May 28, 2010) (unpublished decision) (holding that discovery in derivative action should be stayed pending resolution of motion to dismiss); *Piven v. Ryan*, No. 05 C 4619, 2006 WL 539186, at *5 (N.D. Ill. Mar. 1, 2010) (unpublished decision) (prevailing view in derivative action is that discovery should not be allowed pending a motion

to dismiss).

The Amended Complaint is the only relevant document on a dismissal motion. "[M]otions to dismiss are generally decided on the merits of the complaint alone, without the benefit of discovery." *Vaupel v. United States*, 07-cv-01443, 2008 WL 2333111, at *2 n.2 (D. Colo. Jun. 3, 2008) (unpublished decision). Therefore, I conclude that there is no basis to stay consideration of the pending motions to dismiss to allow Plaintiff to conduct discovery in opposition to the Motion. Plaintiff's Motion to Stay is **DENIED**.

Defendants' Motion to Stay presents a different issue. They seek a stay of discovery pending resolution of the dispositive motions. Stays are generally disfavored in this District. *See Wason Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007) (unpublished decision). However, a stay may be appropriate in certain circumstances. The Court weighs several factors in making a determination regarding the propriety of a stay. *See String Cheese Incident, LLC v. Stylus Show, Inc.*, No. 02-cv-01934, 2006 WL 894955, at * 2 (D. Colo. Mar. 30, 2006) (unpublished decision) (denoting a five-part test). The Court considers (1) the interest of Plaintiff; (2) the burden on Defendants in going forward; (3) the Court's convenience; (4) the interest of nonparties, and (5) the public interest in general. *Id.*

First, the Court balances the Plaintiff's desire to proceed expeditiously with his case against the burden on Defendants of proceeding forward. *Id.* Defendants have filed Motions to Dismiss asserting, *inter alia*, that the Amended Complaint fails to state a claim upon which relief may be granted. Defendants have done more than offer conclusory assertions; they have filed motions to dismiss supported by legal analysis.[4] In such a

---

[4] At this time, the Court takes no position as to whether Defendants' Motions to Dismiss should be granted, but merely notes that it appears that the Motions are based on more than mere speculation.

circumstance, the Court determines that the burden on the Defendants of going forward with discovery outweighs the desire of Plaintiff to have his case proceed expeditiously. *See id.* (finding "that subjecting a party to discovery when a motion to dismiss . . . is pending may subject him to undue burden and expense, particularly if the motion to dismiss is later granted").

The Court also considers its own convenience, the interest of nonparties, and the public interest in general. None of these factors prompt the Court to reach a different result. In fact, the Court notes that neither its nor the parties' time is well-served by being involved in the "struggle over the substance of the suit" when, as here, a dispositive motion is pending. *Democratic Rep. of Congo v. FG Hemisphere Assocs., LLC*, No. 07-7045, 2007 WL 4165397, at *2 (D.C. Cir. Nov. 27, 2007) (unpublished decision) (noting that the reason jurisdictional defenses should be raised at the outset is to avoid unnecessary litigation); *see also Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'" (citations omitted)). Likewise, the imposition of a stay pending a decision on a dispositive motion that would fully resolve the case "furthers the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery." *Id.* at 5; *see also Make a Difference Found.*, 2010 WL 2197354, at *1-2 (staying discovery in shareholder derivative lawsuit where threshold procedural issue pending in motion to dismiss). Finally, there are no compelling nonparty or public interests triggered by the facts at issue. Therefore, a stay will be granted.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Stay [#38] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' Motion to Stay [#54] is **GRANTED**. Discovery is stayed pending resolution of the dispositive motions currently pending before the Court.

Dated: October 21, 2010

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge