**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00842-WJM-KLM

DENIS RYSKAMP, Derivatively on Behalf of BOULDER GROWTH & INCOME FUND,

    Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
SUSAN L. COCIORA, and
JOHN S. HOREJSI,

    Defendants,

and

BOULDER GROWTH & INCOME FUND, INC.,

    Nominal Defendant.

---

**ORDER DENYING MOTIONS TO DISMISS
WITHOUT PREJUDICE TO REFILE**

---

This matter is before the Court on Nominal Defendant Boulder Growth and Income Fund, Inc., and the Review Committee Members' Motion to Dismiss Pursuant to F.R.C.P. 8(a), 12(b)(6), and 23.1, ECF No. 32, as well as Defendants' Horejsi and Ciciora's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1(a), ECF No. 35 (the "Motions"). The parties appeared before the Court on April 13, 2011, at which time oral argument was heard on the Motions for nearly one hour. For the reasons set forth below, the Court denies the Motions without prejudice.

***Factual Background***

This is a shareholder derivative action brought by Plaintiff Denis Ryskamp on behalf of Boulder Growth and Income Fund, Inc. ("Boulder") and against Boulder's Board of Directors (the "Board") for breach of fiduciary duty and unjust enrichment. (*Amended Complaint* ¶ 1, ECF No. 11).  When ruling on a motion filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

The condensed facts that follow are alleged in Plaintiff's First Amended Complaint: Boulder is a closed-end fund with the stated objective of concentrating investment in real estate investment trusts and other registered closed-end income funds. (First Amended Complaint ("FAC") at ¶ 3.)  Defendants are members of the Board.  (*Id.* ¶¶ 5-9.)  Boulder is managed by Boulder Investment Advisers LLC ("BIA") and Stewart Investment Advisers ("SIA"), which are paid a combined fee of 1.25% of Boulder's assets under management.  (*Id.* ¶ 15-17.)

On February 20, 2008, the Board announced a rights offering of common stock to existing shareholders.  (*Id.* at ¶ 23.)  Shortly after the rights offering was completed in June 2008, Doliver Capital Advisors, L.P. ("Doliver"), a competing closed-end fund adviser, filed a Schedule 13-G announcing that it was Boulder's largest shareholder, holding 16.9% of the outstanding stock. (*Id.* at ¶ 30.)   Plaintiff alleges that after discovering that Doliver was now Boulder's largest shareholder, the Board and its advisors caused $50 million of the $76,166,466.08 raised in the rights offering to be invested in cash equivalents.  (*Id.* at ¶ 49.)  The rights offering and subsequent

investment of the proceeds in cash equivalents allegedly caused Boulder's share price to drop, but increased assets under management. (*Id.* ¶ 54.)

In November 2008, the Board suspended the level-rate distribution policy, which eliminated previously-paid monthly payments to shareholders. (*Id.* ¶ 52.) Plaintiff alleges that simultaneously with the Board's suspension of distributions, an entity known as the Ernest Horejsi Trust No. 1B ("EH Trust"), began purchasing the allegedly artificially depreciated Boulder shares in a bid to regain its control position. (*Id.* ¶ 45.) Plaintiff alleges that Boulder's controlling shareholder is the EH Trust, and that Defendant Ciciora is a trustee of the EH Trust. (*Id.* ¶ 14.)  20.  Plaintiff also alleges that Defendants Ciciora and John Horejsi are, among other things, Affiliates (as defined by the Securities Exchange Act of 1934) of the EH Trust. (*Id.* ¶ 20.)

According to Plaintiff, the Board took aggressive action to drive down the share price of Boulder, so the EH Trust could purchase Boulder stock at artificially reduced prices in order to fight off Doliver's bid for control. (*Id.* ¶ 50.) On September 22, 2009, Plaintiff sent the Board a demand letter requesting that the Board institute an action by Boulder against its directors to redress the conduct Plaintiff later alleged in his Amended Complaint. (*Id.* ¶ 79.) The Board refused to file any such action. (*Id.*)

On December 14, 2009, counsel for the Board wrote that a Review Committee had been convened to review Plaintiff's demand. (*Id.* ¶ 41.) On December 17, 2009, Plaintiff sent the Review Committee a letter requesting information about the Review Committee and the scope of its investigation. (*Id.* ¶ 42.) On December 22, 2009, the Review Committee refused to provide any of the information requested. On January 29, 2010, the Review Committee issued a letter stating that the Review Committee had

investigated Plaintiff's claims and decided not to take legal action. (*Id.* at ¶ 43.) The letter revealed that the Review Committee was composed of Defendants (and Directors) Looney, Barr, and Jacobson, and that the Board had granted full authority to the Review Committee to act on behalf of the Board with regard to Plaintiff's demand. (*Id.* ¶ 41.)

On February 23, 2010, Plaintiff again requested that the Board provide certain information and documents pertaining to the content, manner and scope of the Review Committee's investigation. (*Id.* ¶ 82.) The Board again refused to provide any of the requested information. (*Id.*) Plaintiff then brought this action alleging claims for breach of fiduciary duty and unjust enrichment.

### *Discussion*

The parties agree on the standards to initiate a derivative action. *See* ECF No. 33 at 7-8; ECF 35 at 4-5, ECF No. 43 at 10-11. Under Maryland law, a plaintiff in a derivative action must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile. *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007), citing *Kamen v. Kemper Fin. Svcs. Inc.*, 500 U.S. 90, 96 (1991); *Waller v. Waller*, 187 Md. 185, 192 (1946). After demand is made, the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded action is in the best interests of the corporation. *Bender v. Schwartz*, 917 A.2d at 152. If the board fails to take the action demanded following an investigation, the shareholder may sue on behalf of the corporation. *Id.* The shareholder may defeat a motion to dismiss by showing the board did not act independently or demand was wrongly refused. *Id.*

To determine whether demand was wrongly refused, the court reviews the

board's investigation under the business judgment rule, which calls for deference to the board unless the plaintiff can show that the investigation was not conducted independently and in good faith, or that the board's decision was not within the realm of sound business judgment. *Id.*  Plaintiff has the burden of setting forth facts to rebut the presumption that the board acted reasonably and in the corporation's best interests. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).  "A stockholder must show more than mere suspicion and must state a claim in particular, rather than conclusory terms." *Bender*, 917 A.2d at 152-53.  Plaintiff's pleading burden for establishing wrongful refusal of his demand is substantially higher than that required under Rule 8. *Burns v. Friedli*, 241 F. Supp. 2d 519, 525 (D. Md. 2003).  Rule 23.1 requires a Plaintiff "state with particularity" the facts of the case. Fed. R. Civ. P. 23.1(b)(3).

      The Court notes that Defendants stressed in their subject Motions, as well as at oral argument, that Plaintiff lacked the evidence to adequately allege in his amended complaint that the Board did not act independently or that demand was wrongly refused. *See, e.g.,* ECF at 10-14.  The Court is troubled by the fact, however, that Defendants point to a lack of depth and  factual specificity in Plaintiff's factual allegations which has been caused almost entirely by Defendants' own course of conduct  – specifically, Defendants' dogged refusal to provide Plaintiff with information and documentation relevant to the Review Committee's independence, as well as the scope and content of the Review Committee's investigation into Plaintiff's allegations of self-interested dealings by the Board.  As referenced above, Defendants refused on two occasions Plaintiff's pre-suit requests for such information. Once suit had been filed, Defendants objected to providing Plaintiff with the initial disclosures required by Fed.R.Civ.P.

26(a)(1)(A). Proposed Scheduling Order [ECF 49 at 11], and opposed Plaintiff's motion for limited discovery on the issues of the independence and investigation of the Review Committee [ECF 38].

The Court is aware that some courts have held that derivative plaintiffs are generally not entitled to discovery to assist their compliance with Fed. R. Civ. P. 23.1, which governs derivative actions. *Piven v. Ryan*, No. 05 C 4619, 2006 WL 539186, at *5 (N.D. Ill. Mar. 1, 2010).[1] This is not, however, a uniform view. *See, e.g. Kautz v. Sugarman,* 2011 WL 1330676 at *6 (S.D.N.Y., March 31, 2011*)* ("the Court cannot decide the reasonableness of the iStar investigation—or the application of the business judgment rule—at this stage of the litigation. Accordingly, the Court will deny the motion to dismiss and permit the parties to conduct limited discovery on the issue of the Committee's investigation."). And while derivative plaintiffs may not in all cases be *entitled* to such limited discovery, in some cases the interests of justice are best served by requiring the production of a limited amount of information and documentation on the strongly-contested issues raised in motions to dismiss derivative actions.

The Court is convinced that permitting Plaintiff access to a limited amount of relevant information at this juncture of the proceeding is not, as one of Defendants' counsel suggested at oral argument, a license to conduct an unwarranted "fishing

---

[1] The Court is aware that another District Judge in this District stayed discovery in a derivative action pending resolution of motion to dismiss. *Make a Difference Found., Inc. v. Hopkins*, No. 10-cv-00408, 2010 WL 2197354, at *1-2 (D. Colo. May 28, 2010). *Hopkins* is readily distinguished on its facts, however, given that in that case the court was grappling with "proceeding with expensive discovery in a lawsuit that [might] not [be] properly asserted by the right plaintiff or in the right forum." *Id.* at *2. That is manifestly not the case here.

expedition." Plaintiff has already made specific and substantial allegations challenging the independence of the Review Committee, as well as the reasonableness of the Board's investigation under the business judgment rule, as required by the *Bender* and *Aronson* cases, *supra,* and their progeny.  In addition, Plaintiff has already specifically alleged that the Review Committee failed to retain independent counsel, resulting in an inherently flawed investigation. FAC at ¶ 85. *See, Par Pharmaceutical, Inc. Derivative Litigation,* 750 F.Supp. 641, 647 (S.D.N.Y. 1990).  Already armed with these many arrows in his quiver, Plaintiff is far removed from that hypothetical plaintiff who files a clearly insufficient complaint and uses discovery to establish the particularity requirement for stockholder derivative actions. *See In re Merck & Co. Sec., Derivative & ERISA Litigation*, 493 F.3d 393, 400 (3rd Cir. 2007) (citation omitted). In the circumstances of this case, the Court will order that Defendants produce the information Plaintiff last requested before he filed suit, as well as the disclosures Defendants would otherwise have been required to make under Rule 26(a)(1)(A).

### *Conclusion*

For the foregoing reasons, it is hereby ORDERED as follows:

1.   Defendants shall provide Plaintiff with the initial disclosures required by Fed.R.Civ.P. 26(a)(1)(A) on or before May 10, 2011, to include copies of all documents referenced in said disclosures;

2.   Defendants shall provide Plaintiff with all information and documents sought in the Feb, 23, 2010 letter from Plaintiff's Counsel to Defendants' counsel, which is Exhibit I to Defendants' Request for Judicial Notice, ECF 34;

3.   Plaintiff shall have until May 31, 2011 within which to file his Second

Amended Complaint;

4.  Nominal Defendant Boulder Growth and Income Fund, Inc., and the Review Committee Members' Motion to Dismiss Pursuant to F.R.C.P. 8(a), 12(b)(6), and 23.1, ECF No. 32, as well as Defendants' Horejsi and Ciciora's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1(a), ECF No. 35 are DENIED WITHOUT PREJUDICE to being refiled on or before June 24, 2011;

5.  Any dispute regarding the production by Defendants of the information and documents specified in this Order shall be addressed by the District Judge; and

6.  Except as set forth above, the Magistrate Judge's Order Staying Discovery [ECF 61] shall remain in effect until further Order of Court.

Dated this 15th day of April, 2011.

BY THE COURT:

_____
United States District Judge