IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 10-cv-00842-WJM-KLM

DENIS RYSKAMP, derivatively on behalf of BOULDER GROWTH & INCOME FUND, INC.,

    Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
SUSAN L. CICIORA,
JOHN S. HOREJSI,
STEPHEN C. MILLER,
JOEL L. TERWILLIGER,
CARL D. JOHNS,
THE ERNEST HOREJSI TRUST NO. 1B,
BOULDER INVESTMENT ADVISERS, LLC,
STEWART INVESTMENT ADVISERS, and
FUND ADMINISTRATIVE SERVICES, LLC,

    Defendants,

and

BOULDER GROWTH & INCOME FUND, INC.,

    Nominal Defendant.
_____

**ORDER ISSUING FINAL APPROVAL OF DERIVATIVE LITIGATION SETTLEMENT
AND GRANTING APPLICATION FOR AWARD OF ATTORNEYS' FEES
AND EXPENSES AND PLAINTIFF'S AWARD**
_____

    This matter is before the Court on Plaintiff's Unopposed Motion for Final Approval

of Derivative Litigation Settlement (ECF No. 267), and Plaintiff's Application for Award of

Attorneys' Fees and Expenses and Plaintiff's Award (ECF No. 261).  For the following reasons, the Court GRANTS the two Motions, issues final approval of the Stipulation and Agreement of Settlement entered into between the parties to this action (ECF No. 253-1), awards Plaintiff's counsel $1,500,000.00 in attorneys' fees and expenses, and awards Plaintiff a $50,000.00 incentive award.

## I.  BACKGROUND

Plaintiff Denis Ryskamp originally filed this derivative action on April 14, 2010. (ECF No. 1.)  After filing two more iterations of the Complaint (ECF No. 11, 150) and being granted leave to conduct limited discovery (ECF No. 85), Plaintiff filed the operative Third Amended Complaint (the "Operative Complaint") on November 30, 2011 (ECF No. 174).

In the Operative Complaint, Plaintiff, suing derivatively on behalf of Boulder Growth & Income Fund, Inc. ("Boulder"), brings suit against current and former members of Boulder's Board of Directors and other Boulder executives, along with entities affiliated with certain individual Defendants.  (ECF No. 174, ¶¶ 30-50.)  In short, Plaintiff alleges that Defendant "Stewart Horejsi, through his handpicked Boulder Board of family members and friends and the Boulder advisory entities and their employees which he controlled, manipulated Boulder and its rights offerings, investments and share price for his and his family's personal gain to the great harm of Boulder."  (Id. ¶ 2.)[1]

---

[1] The Court provided a more detailed summary of Plaintiff's allegations in its Order denying without prejudice Defendants' previously filed Motions to Dismiss.  (See ECF No. 85, at 2-4.)

2

Plaintiff brings claims for breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of fiduciary duty, corporate waste, gross mismanagement, abuse of control, and unjust enrichment. (*Id.* ¶¶ 256-308.)

On December 16, 2011, several Defendants moved to dismiss the Operative Complaint. (ECF No. 196-205.) Those Motions remained pending at the time the parties' reached the settlement discussed herein.

On March 26, 2012, Plaintiff filed an Unopposed Motion for Preliminary Approval of Derivative Litigation Settlement (ECF No. 252), along with a Memorandum of Law in Support of the Motion (ECF No. 253). Attached to the Memorandum was a Stipulation and Agreement of Settlement between the parties. (ECF No. 253-1.) The proposed settlement includes the following provisions:

1. Boulder will receive $4,000,000 in cash, $3,000,000 of which will be paid by ICI Mutual Insurance Co. (an insurer of certain Defendants), and $1,000,000 of which will be paid by Defendant Boulder Investment Advisors, LLC ("BIA");

2. Boulder will receive a one-year waiver of advisory fees from BIA;

3. Defendant Susan L. Ciciora will be replaced on the Boulder board by Steven K. Nogaard;

4. Boulder's insider trading policy will be amended;

5. Boulder's code of ethics will be published on its website;

6. Boulder's annual reports will contain certain disclosures regarding their advisers; and

7. Boulder's board members will attend director education programs.

(*Id.* at 10-12; *see also id.* at 4 n.1.) The settlement also included a proposed program of notice to shareholders regarding the settlement. (*Id.* at 15-16.) Further, the settlement proposes that Plaintiff's counsel be paid $1,500,000 in attorneys' fees and expenses, to be taken out of the $4,000,000 award to Boulder. (*Id.* at 16-17.) The settlement also proposes that Plaintiff himself be paid $50,000 as an incentive award, to be taken out of the $4,000,000 award to Boulder. (*Id.*)

On April 20, 2012, the Court issued its Order Preliminarily Approving Derivative Litigation Settlement and Providing for Notice of Settlement in which, among other things, the Court approved the parties' proposed program of notice of the settlement to Boulder shareholders and to the public. The notice included information regarding the settlement fairness hearing that the Court would hold on July 31, 2012. (ECF No. 256.)

On June 20, 2012, Plaintiff filed his currently pending Application for Award of Attorneys' Fees and Expenses and Plaintiff's Award. (ECF No. 261.)[2] On July 10, 2012, Plaintiff filed his currently pending Unopposed Motion for Final Approval of Derivative Litigation Settlement. (ECF No. 267.)

On July 16, 2012, counsel for Boulder filed declarations under penalty of perjury indicating that notice of the settlement had been provided to shareholders and the public in accordance with the Court's Order Preliminarily Approving Derivative Litigation Settlement and Providing for Notice of Settlement. (ECF No. 275.) Among other forms

---

[2] At the July 31, 2012 settlement fairness hearing, Defendants represented that they did not oppose Plaintiff's Application for Award of Attorneys' Fees and Expenses and Plaintiff's Award.

of notice, 7,040 notices were mailed to potential current Boulder shareholders. (ECF No. 275-1, ¶ 9.)

During the time period for objection to the proposed settlement, the Court received a total of two written objections. (ECF No. 266, 271.)[3] The first objection was filed by Eric Boughton, on behalf of Matisse Long/Short Income Focus Fund LLC ("Matisse Long"). In the written objection, Boughton represents that Matisse Long holds 140,000 shares of Boulder, which it purchased at various points between July 27, 2011 and February 14, 2012. (ECF No. 266, at 1.) Boughton objects to the proposed settlement on the following grounds: (1) the proposed settlement provides no recovery for non-insider shareholders; (2) the proposed settlement provides no recovery for previous shareholders; (3) the proposed settlement does not sufficiently punish the individual Defendants; and (4) the proposed settlement does not sufficiently change Boulder's structure and governance. (*Id.* at 1-3.) Boughton requests that the settlement be rejected and that the litigation continue in the hopes of a more meaningful recovery. (*Id.* at 3.)

The second objection was filed by Dan and Eileen Plettner. The Plettners make many of the same or similar objections to those that Boughton advanced. (ECF No. 271, at 19-28.) The primary additional objection the Plettners advance is that Dan

---

[3] The Court also received a third filing, a letter from purported shareholder Fay Stein. (ECF No. 276.) However, the letter from Ms. Stein for the most part simply requested more information regarding the settlement. (*Id.*)

Plettner should have been selected by Plaintiff's counsel as the named Plaintiff in this action rather than Denis Ryskamp. (*Id.* at 16-19.)

The parties filed responses to the objections (ECF No. 277-281), and the Plettners filed a Reply (ECF No. 283).

On July 31, 2012, the Court held a settlement fairness hearing. (ECF No. 282.) At that hearing, the parties presented argument in favor of the settlement. No objectors appeared at the settlement hearing.

## II. ANALYSIS

**A.     Motion for Final Approval of Settlement**

In considering the arguments raised in Plaintiff's Unopposed Motion for Final Approval of Derivative Litigation Settlement, the arguments made by the parties at the settlement hearing, and the arguments presented in the two objections, the Court finds good cause to order final approval of the settlement in this action.

"Before approving the settlement of a shareholders' derivative action . . ., the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also* 10 Federal Procedure, Lawyers Edition § 25:175 ("The general standard used to evaluate a settlement [in a derivative shareholder action] is that it must be fair, adequate, and reasonable, and not the result of fraud or collusion, and that it must be in the best interests of the parties.").

The Court has found no evidence or indication of fraud or collusion between the parties in arriving at this settlement, suggesting that it has been negotiated at arm's length and arrived at in good faith. *See Maher*, 714 F.2d at 456-57 (stating that a factor favoring approval of a derivative litigation settlement is that it "was the result of arm's-length negotiation, after extensive discovery and intelligent evaluation of the lawsuit by the parties and their capable counsel"). Indeed, with various Motions to Dismiss still pending at the time of the settlement, the Plaintiff's prospects for success in this action were certainly in question. *See id.* at 455 ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable. The courts, therefore, do not lightly reject such settlements.").

The Court also finds that the terms of the settlement are fair, adequate, and reasonable. The settlement provides for the payment of a total of $4,000,000 from one Defendant and certain Defendants' insurer to Boulder. These payments are notable for several reasons. First, $4,000,000 is a significant amount of money, and Boulder's shareholders own shares in the company acquiring that money. The objectors' complaint that the settlement does not benefit the shareholders directly, although true, lacks merit because this is a derivative action. *See Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 721-22 (1974) ("[A]ny recovery obtained in [a derivative] action would belong to the corporation, not to the . . . shareholders as individuals, for the shareholder in a derivative action enforces not his own individual rights, but rights which the corporation has."). Nothing that the Court is aware of would

preclude the objectors from filing their own direct action against Defendants. The $4,000,000 in payments is also notable because it is being made by one Defendant and other Defendants' insurer, which, contrary to the objectors' complaints, does cause a detriment to those Defendants. Further, BIA's waiver of advisory fees also causes a financial detriment to it.

The fact that the settlement involves some corporate governance reforms also weighs in favor of approval of the settlement. Indeed, some derivative action settlements only involve corporate governance reforms, and not any monetary payment. *See Maher*, 714 F.2d at 466 ("[A] settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) ("Influencing the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted 'even though no direct monetary benefits are paid by the defendants to the corporation.'") (quoting *Maher*, 714 F.2d at 466).

Finally, only two objections to the settlement were received and no objectors appeared at the settlement hearing, despite the fact that notice of the settlement was sent to the at least 805 shareholders of Boulder stock.[4] This fact weighs heavily in favor

---

[4] The Declaration of Jennifer M. Keough (ECF No. 275-1) describes the process by which shareholders were identified for purposes of mailing the notice of the settlement. First, 805 unique shareholders were identified, and notices were mailed to them. Also, an additional 2,124 notices were mailed to "nominees" who purchased shares on behalf of beneficial purchasers of Boulder shares. Further, an additional 3,911 notices were sent to shareholders identified by the nominees. While this filing does not make clear the exact number of actual

of approval of the derivative litigation settlement.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (where 27,883 notices were sent to class members, but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that "this small number of objections weigh[s] in favor of the settlement"); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .") (quotation marks and brackets omitted); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (giving the lack of meaningful objection "substantial weight in approving the proposed settlement").

The arguments advanced by Boughton and the Plettners in their objections do not sufficiently counter the reasons explained above why approval of the settlement is warranted.  The objectors' primary argument that the settlement does not provide for a direct financial benefit to the shareholders lacks merit because this is a derivative action brought on behalf of Boulder, and because the financial payments to Boulder will at least indirectly benefit the shareholders.  Also, the objectors' argument that the settlement does not sufficiently punish Defendants overlooks the $4,000,000 in

---

Boulder shareholders, the Court errs on the conservative side and finds the number of shareholders to be at least 805.  At the settlement hearing, counsel were only able to make representations about the number of notices sent, which does not necessarily reflect the number of shareholders.

payments and BIA's waiver of advisory fees. In addition, the objectors' argument that this action should be pursued further towards a more favorable settlement to Boulder overlooks the significant risk that this action could be dismissed based on the grant of Defendants' dispositive motions, leaving Boulder with absolutely no recovery. Finally, Dan Plettner's complaint regarding the fact that he was not chosen as the named Plaintiff by Plaintiff's counsel is a dispute between Mr. Plettner and Plaintiff's counsel, not implicating the resolution of this action.[5]

For the foregoing reasons, the Court finds good cause to order final approval of the settlement entered into between the parties to this action.

**B.     Application for Award of Attorneys' Fees and Expenses**

The Court also finds good cause to award Plaintiff's counsel their requested attorneys' fees and expenses in the amount of $1,500,000, which will be taken from the $4,000,000 payment to Boulder as part of the settlement.

Attorneys' fees are properly calculated by determining the "lodestar" – the number of hours reasonably expended multiplied by reasonably hourly rates – and then adjusting the lodestar figure, if appropriate, by considering one or more of the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson* factors").[6]  *See, e.g.*, *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d

---

[5] If Mr. Plettner believes Plaintiff's counsel breached some contractual duty by choosing Plaintiff as the named Plaintiff rather than Mr. Plettner, or by improperly failing to reimburse Mr. Plettner for the time he spent on this action, Mr. Plettner can file his own breach-of-contract action or the like against Plaintiff's counsel.

[6] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8)

10

1098, 1102-04 (10th Cir. 2010); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355-56 (10th Cir. 1992).

Plaintiff's counsel represents that the appropriate lodestar figure in this action is $1,838,519.70, based on 4,123.41 hours of time spent on the action, multiplied by hourly billing rates ranging from $155 per hour to $595 per hour. (ECF No. 263, 263-1, 263-2, 264.) Plaintiff's counsel also represents that they have incurred $73,164.60 in expenses in prosecuting this action. (*Id.*) Subtracting that $73,164.60 in expenses from the entire requested amount of $1,500,000 leaves a total request for attorneys' fees in the amount of $1,426,835.40. Thus, Plaintiff's counsel is requesting that the Court apply a multiplier of approximately 0.77 (somewhat more precisely, 0.7761) to the lodestar figure of $1,838,519.70, resulting in an attorneys' fees award of $1,426,835.40, and a total award of attorneys' fees and expenses in the amount of $1,500,000.

The Court finds that the amount of expenses sought and the hourly billing rates of Plaintiff's counsel are reasonable. While the Court is less convinced regarding the reasonableness of the 4,123.41 hours of time allegedly spent prosecuting this action, the Court's mild concerns in this regard are overcome by the very low 0.77 multiplier being sought. *Cf. In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier to lodestar figure in shareholder derivative suit in which plaintiffs' counsel worked on contingency in the face of considerable risk and uncertainty); *see also Miniscribe Corp. v. Harris Trust Co. of Cal.*,

---

the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* at 717-19.

11

309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57 in class action); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543, 2010 WL 5387559, at *3-*4 (D. Colo. Dec. 22, 2010) (applying 1.82 lodestar multiplier in class action); *Lucas v. Kmart Corp.*, No. 99-cv-01923, 2006 WL 2729260, at *9 (D. Colo. July 27, 2006) (applying 1.87 lodestar multiplier in class action).  As a hypothetical, even if Plaintiff's counsel had advanced a lower figure of approximately 3,200 hours spent prosecuting this action, that would only require the Court to apply a similarly modest multiplier of 1.0 (*i.e.*, not applying a multiplier) to result in the same attorneys' fees award.  The fact that a very low multiplier of 0.77 is being applied here resolves any mild concerns the Court has regarding the number of hours allegedly spent by Plaintiff's counsel in prosecuting this action.

The scope and nature of the work required by Plaintiff's counsel during the more than two years this action has been pending, the complexity of the case, and the fact that Plaintiff's counsel was working on contingency basis all weigh in favor of a significant attorneys' fees award in this action.  *See Johnson*, 488 F.2d at 717-19.

The Court therefore concludes that $1,500,000 constitutes fair compensation to Plaintiff's counsel for their work on this case.

**C.    Plaintiff's Award**

The Court also approves Plaintiff's request for an incentive award of $50,000, which will also be taken from the $4,000,000 payment to Boulder as part of the settlement.

12

The Court recognizes that there is some dispute in the law regarding the propriety of incentive awards for plaintiffs in derivative actions and for representative plaintiffs in class actions, although the weight of authority appears to favor such awards. "The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In this case, Plaintiff has established the significant amount of time he expended over the more than two years of prosecuting this action (a total of approximately 260 hours as of the date of the settlement hearing), and the integral role he played in assisting his counsel in the prosecution of the action. Further, that prosecution led to the favorable settlement Plaintiff achieved for the nominal Defendant and its shareholders. Under the circumstances present here, the Court finds it appropriate to approve an incentive award for Plaintiff, and finds Plaintiff's requested award of $50,000 to be appropriate. *See, e.g.*, *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards of either $55,000 or $35,000 to each of five representative plaintiffs).

### III. CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1)  Plaintiff's Unopposed Motion for Final Approval of Derivative Litigation Settlement (ECF No. 267) is GRANTED;

(2)  The Court ISSUES final approval of the Stipulation and Agreement of Settlement entered into between the parties to this action (ECF No. 253-1);

(3)  Plaintiff's Application for Award of Attorneys' Fees and Expenses and Plaintiff's Award (ECF No. 261) is GRANTED;

(4)  The Court AWARDS the total sum of $1,500,000.00 in attorneys' fees and expenses to Plaintiff;

(5)  The Court AWARDS the total sum of $50,000.00 to Plaintiff as an incentive award; and

(6)  This action is DISMISSED WITH PREJUDICE, subject only to the Court's continuing jurisdiction to enforce the terms of the parties' settlement.

Dated this 14th day of August, 2012.

BY THE COURT:

_____
William J. Martinez
United States District Judge